FILED
CHARLOTTE, NC

NOV 17 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:20-CR-255-MEO |
| | ) | |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| (1) STEPHANIE WIEDNER | ) | 18 U.S.C. § 1343 |
| a/k/a STEPHANIE REARDON | ) | 18 U.S.C. § 1014 |
| | ) | 18 U.S.C. § 1957 |
| and | ) | 26 U.S.C. § 7206(1) |
| | ) | 18 U.S.C. § 2 |
| (2) DAIN WIEDNER | ) | |

THE GRAND JURY CHARGES:

At all times material to this Indictment:

**Introduction**

1. Between at least in or about 2020 and in or about September 2024, Defendants STEPHANIE WIEDNER, a/k/a STEPHANIE REARDON, ("S. WIEDNER") and DAIN WIEDNER ("D. WIEDNER") executed a scheme to defraud Victim Company 1 by making more than $4.8 million in unauthorized transfers from Victim Company 1's bank accounts. During the scheme, S. WIEDNER and D. WIEDNER fraudulently enriched themselves by obtaining at least $1.9 million from Victim Company 1 by, among other things, using Victim Company 1's funds to make payments on their personal credit cards for travel, meals, personal care treatments, clothing, shoes, and jewelry, payment of their mortgage, and payment of their car loan.

2. After their scheme began to unravel and S. WIEDNER and D. WIEDNER ceased their employment with Victim Company 1, they submitted and caused to be submitted a false and fraudulent home equity line of credit ("HELOC") application in their names to Financial Institution 1 that contained false information concerning their employment and salaries. As a result of their fraudulent application, S. WIEDNER and D. WIEDNER received a $500,000 HELOC. S. WIEDNER and D. WIEDNER used a large portion of this HELOC to pay off their credit cards and to cover up and attempt to cover up their wire fraud scheme.

3. S. WIEDNER and D. WIEDNER failed to report any of the funds they embezzled from Victim Company 1 on their 2022 and 2023 Joint Individual Income Tax Returns, Forms 1040, filed with the Internal Revenue Service ("IRS").

## The Defendants and Related Entities

4. Victim Company 1 was a privately held company located in Charlotte, North Carolina. M.C., J.C., and D.C. owned Victim Company 1. Victim Company 1 had an operations account at First Citizens Bank, identified herein as Operations Account x3692 and M.C., J.C., and D.C. were the only signatories on Operations Account x3692.

5. M.C. and J.C. had a bank account at First Citizens Bank, identified herein as Rental Account x3102, that was used by M.C. and J.C. to, among other things, receive funds to pay the capital gains tax from the sale of real estate. M.C. and J.C. were the only signatories on Rental Account x3102.

6. S. WIEDNER and D. WIEDNER were married and residents of Charlotte, North Carolina, within the Western District of North Carolina. Between in or about 2016 and in or about September 2024, S. WIEDNER was employed at Victim Company 1 as an administrative assistant and bookkeeper. In or about 2023, S. WIEDNER put D. WIEDNER on Victim Company 1's payroll without the knowledge of Victim Company 1. D. WIEDNER remained on the payroll of Victim Company 1 without its knowledge until in or about September 2024.

7. Financial Institution 1 was a credit union headquartered in Charlotte, North Carolina, whose deposits were insured by the National Credit Union Share Insurance Fund ("NCUSIF") and which operated in, and the activities of which, affected interstate and foreign commerce.

8. The Internal Revenue Service was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States including the ascertainment, computation, assessment, and collection of taxes.

## The Scheme to Defraud Victim Company 1

9. The purpose of the scheme to defraud Victim Company 1 was for S. WIEDNER and D. WIEDNER to unjustly enrich themselves by making more than $4.8 million in unauthorized transfers from Victim Company 1's bank accounts and then to embezzle at least $1.9 million by using Victim Company 1's funds to, among other things, pay off multiple personal credit cards, which they used for personal expenditures, to make payments on their mortgage, and to make payments on their car loan.

10. S. WIEDNER and D. WIEDNER generally carried out their fraudulently scheme as follows:

a. S. WIEDNER had access to the bank accounts and books and records of Victim Company 1.

b. Between in or about 2020 and in or about 2024 S. WIEDNER increased her salary from Victim Company 1 without the authorization, consent, or knowledge of Victim Company 1 or its owners.

c. In or about 2023, S. WIEDNER put D. WIEDNER on Victim Company 1's payroll without the knowledge of Victim Company 1 or its owners. In or about 2023 and 2024, D. WIEDNER received more than $170,000 and $101,000 in unauthorized wages from Victim Company 1, respectively.

d. Between on or about January 8, 2020, and on or about September 21, 2024, S. WIEDNER and D. WIEDNER made and caused to be made more than 1,500 unauthorized transfers of funds, totaling more than $4.8 million, from Operations Account x3692 to S. WIEDNER and D. WIEDNER's financial accounts without the knowledge or consent of Victim Company 1 or its owners, including the following:

i. At least $3.9 million in American Express credit card payments;

ii. At least $418,000 in Citi credit card payments;

iii. At least $260,000 in Chase credit card payments;

iv. At least $105,000 in PayPal account transactions;

v. At least $40,000 in Discover credit card payments;

vi. At least $20,000 in Wells Fargo credit card payments;

vii. At least $20,000 in Capital One credit card payments;

viii. At least $18,000 in Kubra Data Transfer Ltd. (Volvo) vehicle payments;

ix. At least $18,000 in Chase Mortgage payments.

e. On or about April 18, 2023, M.C. and J.C deposited approximately $3.2 million into Rental Account x3102 to pay anticipated tax liabilities. Between on or about April 21, 2023, and on or about January 19, 2024, S. WIEDNER transferred more than $3.8 million from Rental Account x3102 to Operations Account x 3692.

f. Between 2020 and 2024, S. WIEDNER and D. WIEDNER embezzled more than $1.9 million from Victim Company 1 by, among other things, using Victim Company 1's funds to pay off their personal credit cards and loans. S. WIEDNER and D. WIEDNER used Victim Company 1's funds to pay for personal expenses, including but not limited to:

i. More than $25,000 at Burberry;

ii. More than $23,000 at Chatham Bars Inn;

iii. More than $7,000 at Hollywood Feed;

iv. More than $6,000 at Gucci;

v. More than $32,000 at Louis Vuitton;

vi. More than $6,000 at Low T;

vii. More than $175,000 at Neiman Marcus;

viii. More than $12,000 at The Ocean House;

ix. More than $59,000 at OVME;

x. More than $13,000 at The Palm;

xi. More than $16,000 at The Polo Bar;

xii. More than $10,000 at Prada;

xiii. More than $45,000 at Richemont Jewelry;

xiv. More than $8,600 at The Ritz Carlton;

xv. More than $17,000 at Swatch Group;

xvi. More than $73,000 at Toska Spa & Facial Bar;

xvii. More than $25,000 at The White Elephant Hotel

g. S. WIEDNER concealed and attempted to conceal her and D. WIEDNER'S embezzlement from Victim Company 1 by, among other things:

i. Providing materially false information to the owners of Victim Company 1 concerning the finances of Victim Company 1;

ii. Making materially false accounting entries in Victim Company 1's books and records;

iii. Removing D.C. as the owner of Victim Company 1 in Victim Company

1's bookkeeping software; and

iv. Inserting herself as the "owner" of Victim Company 1 in Victim Company 1's bookkeeping software to prevent M.C., J.C., or D.C. from accessing Victim Company 1's books and records.

**<u>COUNT ONE</u>**
(Wire Fraud)

11. Paragraphs 1 through 10 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

12. From in or about January 2020 through in or about September 2024, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendants,

**(1) STEPHANIE WIEDNER, a/k/a STEPHANIE REARDON,**
**and**
**(2) DAIN WIEDNER**

with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce any writing, signal, picture, and sound, *to wit*, among other things, electronic financial transactions in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 1343.

**<u>COUNT TWO</u>**
(False Statements to a Financial Institution)

13. Paragraphs 1 through 10 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

14. On or about September 30, 2024, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendants,

**(1) STEPHANIE WIEDNER, a/k/a STEPHANIE REARDON,**
**and**
**(2) DAIN WIEDNER**

aided and abetted by each other, knowingly made and caused to be made false statements with the intent to influence the actions of Financial Institution 1, the accounts of which were insured by the NCUSIF, to wit, in the HELOC Application for S. WIEDNER and D. WIEDNER, they falsely represented that they were each currently employed by Victim Company 1 where they earned a monthly salary of $9,600 and $11,540, respectively.

All in violation of Title 18, United States Code, Sections 1014 and 2.

**COUNT THREE**
(Engaging in Monetary Transactions in Criminally Derived Property)

15. Paragraphs 1 through 10 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

16. On or about October 29, 2024, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendants

**(1) STEPHANIE WIEDNER, a/k/a STEPHANIE REARDON,**
**and**
**(2) DAIN WIEDNER**

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly engage, attempt to engage, and cause others to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, *to wit*, an official check from Financial Institution 1 to American Express for $169,407.12, which involved the proceeds of a specified unlawful activity, that is, false statements to Financial Institution 1 as charged in Count Two, and that while engaging, attempting to engage in, and causing others to engage in such monetary transaction knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1957 and 2.

**COUNT FOUR**
(Engaging in Monetary Transactions in Criminally Derived Property)

17. Paragraphs 1 through 10 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

18. On or about October 29, 2024, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendants

**(1) STEPHANIE WIEDNER, a/k/a STEPHANIE REARDON,**
**and**

**(2) DAIN WIEDNER**

aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly engage, attempt to engage, and cause others to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, *to wit*, an official check from Financial Institution 1 to Cardmember Services, JP Morgan Chase for $12,219.06, which involved the proceeds of a specified unlawful activity, that is, false statements to Financial Institution 1, as charged in Count Two, and that while engaging in, attempting to engage in, and causing others to engage in such monetary transaction knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Sections 1957 and 2.

**COUNT FIVE**
(Filing a False Tax Return)

19. Paragraphs 1 through 10 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

20. On or about April 16, 2023, in the Western District of North Carolina, the defendants,

**(1) STEPHANIE WIEDNER, a/k/a STEPHANIE REARDON,**
**and**
**(2) DAIN WIEDNER**

residents of Charlotte, North Carolina, did willfully make and subscribe and file and cause to be filed with the IRS, their U.S. Joint Individual Income Tax Return, Form 1040, for 2022, which was verified by a written declaration under the penalties of perjury and which S. WIEDNER and D. WIEDNER did not believe to be true and correct as to every material matter. That Form 1040 reported S. WIEDNER and D. WIEDNER's total income on Line 9 was $256,516, whereas S. WIEDNER and D. WIEDNER then and there well knew and believed, their total income on Line 9 was substantially greater than the amount reported.

All in violation of Title 26, United States Code, Section 7206(1).

**COUNT SIX**
(Filing a False Tax Return)

21. Paragraphs 1 through 10 of this Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

22. On or about October 15, 2024, in the Western District of North Carolina, the

defendants,

**(1) STEPHANIE WIEDNER, a/k/a STEPHANIE REARDON,**
**and**
**(2) DAIN WIEDNER**

residents of Charlotte, North Carolina, did willfully make and subscribe and file and cause to be filed with the IRS, their U.S. Joint Individual Income Tax Return, Form 1040, for 2023, which was verified by a written declaration under the penalties of perjury and which S. WIEDNER and D. WIEDNER did not believe to be true and correct as to every material matter. That Form 1040 reported S. WIENDER and D. WIENDER's total income on Line 9 was $363,038, whereas S. WIEDNER and D. WIEDNER then and there well knew and believed, their total income on Line 9 was substantially greater than the amount reported.

All in violation of Title 26, United States Code, Section 7206(1).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in Counts One through Four of this Bill of Indictment;

b. All property involved in the violations set forth in Counts Three and Four of this Bill of Indictment; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $2,448,113.87, such amount constituting the proceeds of the crimes set forth herein;

b. The following jewelry and luxury items:

1. One Chanel Timeless Classic Mini O-Case in Rose Foncé handbag, purchased from Neiman Marcus on or about June 12, 2021

2. One Chanel Black Flapbag Agneau handbag, purchased from Neiman Marcus on or about June 9, 2022.

3. One Louis Vuitton Navy Blue Pochette Coussin handbag, purchased from Louis Vuitton on or about July 30, 2022.

4. One Chanel Bleu Flapbag Agneau handbag, purchased from Neiman Marcus on or about October 7, 2022.

5. One Chanel Beige Flapbag Agneau handbag, purchased from Neiman Marcus on or about October 26, 2022.

6. One Tag Heuer Connected E4 Golf Edition watch with red rubber 45mm strap and USB-C charging base, purchased from LVMH Watch & Jewelry on or about December 17, 2022.

7. One Louis Vuitton Speedy Bandoulière 25 handbag, purchased from Louis Vuitton on or about January 6, 2023.

8. One Burberry Top Handle Note handbag, purchased from Burberry on or about February 5, 2023.

9. One Louis Vuitton Bella Mahina handbag, purchased from Louis Vuitton on or about February 24, 2023.

10. One Louis Vuitton Pochette Felicie handbag, purchased from Louis Vuitton on or about March 31, 2023.

11. One Omega Seamaster Planet Ocean 600m watch, purchased from Omega on or about April 18, 2023.

12. One Omega Seamaster Aqua Terra 150m watch, purchased from Omega on or about June 9, 2023.

13. One Cartier Yellow Gold Diamond LOVE bracelet, purchased from Cartier on or about June 13, 2023.

14. One Cartier Yellow Gold LOVE single stud earring, purchased from Cartier on or about June 13, 2023.

15. One Cartier Yellow Gold LOVE single stud earring, purchased from Cartier on or about June 16, 2023.

16. One Chanel Jaune Flapbag Agneau handbag, purchased from Neiman Marcus on or about July 8, 2023.

17. One Chanel Bleu O Coin Agneau purse, purchased from Neiman Marcus on or about July 8, 2023.

18. One Chanel Bleu Marine Large Shopping Tote bag, purchased from Neiman Marcus on or about July 18, 2023.

19. One Chanel Black Flapbag Jean handbag, purchased from Neiman Marcus on or about September 15, 2023.

20. One Cartier White Gold LOVE bracelet, purchased from Cartier on or about November 10, 2023.

21. Two Cartier Yellow Gold Juste Un Clou hoop earrings, purchased from Cartier on or about November 10, 2023.

22. One Chanel White O Mini handbag, purchased from Neiman Marcus on or about November 15, 2023.

23. One Chanel Turquoise Flapbag Agneau with handle handbag, purchased from Neiman Marcus on or about November 15, 2023.

24. One Omega Seamaster Boutique Editions watch, purchased from Omega on or about November 23, 2023.

25. One Burberry handbag, purchased from Burberry on or about November 25, 2023.

26. One Chanel Bleu Rose Flapbag Denim handbag, purchased from Neiman Marcus on or about December 7, 2023.

27. One Cartier Yellow Gold Juste Un Clou bracelet, purchased from Cartier on or about December 16, 2023.

28. One Dior Lady D-Joy Micro bag handbag, purchased on or about January 12, 2024.

29. One Chanel Vert Clair Flapbag Sequin Degradé handbag, purchased from Neiman Marcus on or about February 2, 2024.

30. One Chanel Blanc Flapbag Tweed handbag, purchased from Neiman Marcus on or about February 2, 2024.

31. One Rose Gold LOVE Bracelet, purchased from Cartier on or about February 12, 2024.

32. One Chanel Blanc Hobo Bag handbag, purchased from Neiman Marcus on or about March 22, 2024.

33. One Chanel Noir/Rose Flapbag handbag, purchased from Neiman Marcus on or about April 12, 2024.

34. One Chanel White Hobo Bag Veau handbag, purchased from Neiman Marcus on or about April 26, 2024.

35. One Santos De Cartier watch, purchased from Cartier on or about May 20, 2024.

36. One Chanel Vert Clair Flapbag with handle handbag, purchased from Neiman Marcus on or about June 10, 2024.

37. One LOVE Pendant Necklace in 18K white gold and pink gold with double strand chain, purchased from Cartier on or about June 19, 2024.

38. One Chanel Small Sequin Gabrielle Hobo Bag handbag, purchased on or about July 7, 2024.

39. Two Tiffany & Co. 1837 hoop earrings, purchased from Tiffany & Co. on or about July 11, 2024.

40. One Tiffany & Co. 1837 cuff bracelet, purchased from Tiffany & Co. on or about July 11, 2024.

41. One Tiffany & Co. 1837 ring, purchased from Tiffany & Co. on or about July 11, 2024.

42. One Tiffany & Co. Return to Tiffany: Lovestruck Heart Tag bracelet, purchased from Tiffany & Co. on or about July 14, 2024.

43. One Tiffany & Co. Elsa Peretti: Pearls by the Yard bracelet, purchased from Tiffany & Co. on or about July 14, 2024.

44. One Tiffany & Co. Elsa Peretti: Pearls by the Yard necklace, purchased from Tiffany & Co. on or about July 14, 2024.

45. One Tiffany & Co. Elsa Peretti: Color by the Yard ring, purchased from Tiffany & Co. on or about July 14, 2024.

46. One Tiffany & Co. Elsa Peretti: Diamonds by the Yard ring, purchased from Tiffany & Co. on or about July 14, 2024.

47. One Chanel Jaune Flapbag Agneau with Perle handbag, purchased from Neiman Marcus on or about July 15, 2024.

48. Two Cartier d'Amour diamond stud earrings, purchased from Cartier on or about July 15, 2024.

49. One Chanel Rose Hobo Bag Agneau Métallisé handbag, purchased from Neiman Marcus on or about July 23, 2024.

A TRUE BILL:

[redacted]

FOREPERSON

RUSS FERGUSON
UNITED STATES ATTORNEY

SARA KINLAW
ASSISTANT UNITED STATES ATTORNEY

CARYN FINLEY
ASSISTANT UNITED STATES ATTORNEY